IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-524

No. COA20-347

Filed 5 October 2021

Guilford County, No. 14CVD007148

GUILFORD COUNTY by and through its CHILD SUPPORT ENFORCEMENT UNIT, ex. rel., HALEIGH MABE, Plaintiff,

v.

JUSTIN MABE, Defendant.

Appeal by plaintiff from order entered 23 October 2019 by Judge Tonia A. Cutchin in District Court, Guilford County. Heard in the Court of Appeals 23 February 2021.

*Deputy County Attorney Taniya D. Reaves, for plaintiff-appellant.*

*Melrose Law, PLLC, by Adam R. Melrose, for defendant-appellee.*

STROUD, Chief Judge.

¶ 1     Plaintiff appeals a continuance order. Because defendant did not file a proper motion pursuant to North Carolina General Statute § 49-14 to challenge the prior adjudication of paternity, we reverse and remand.

## I.     Background

¶ 2     On or about 3 July 2014, Guilford County Child Support Enforcement Agency, ("CSEA") on behalf of Ms. Haleigh Mabe ("Mother") filed a IV-D complaint against

defendant Mr. Justin Mabe for child support. The complaint alleged Ms. Mabe was the "caretaker" of the minor child, and Mr. Mabe was the father of the minor child. A copy of the child's birth certificate was attached to the complaint, and it lists Mother as the child's mother; the blank for "father" states: "*HUSBAND* INFORMATION REFUSED[.]" (Emphasis added.) Defendant was served with the summons and complaint on 7 July 2015, but he failed to answer or file any responsive pleading.

¶ 3 On 24 November 2015, the trial court entered a default judgment against defendant establishing child support. The order includes both a finding of fact and a conclusion of law that defendant was the father of the minor child. The child support order also decreed that, "[p]aternity is established between the Defendant and child[.]" Defendant did not appeal from the child support order.

¶ 4 After entry of the child support order, in February of 2016, CSEA filed a "motion for order to show cause" for defendant's failure to pay his child support. (Capitalization altered.) On 25 February 2016, the trial court entered an order for defendant to appear and show cause. From our record at least three show cause orders were entered by the trial court, although none of the orders in our record were served. Several continuance orders were also entered. [1]

---

[1] On 10 October 2017, defendant appeared for hearing on one of the prior orders to show cause. The hearing was continued based upon defendant's agreement to pay $184 that day and $100 for each of the three following months. The continuance order required defendant to appear

¶ 5        On 23 September 2019, defendant filed a *pro se* motion to modify child support, using 2003 AOC form AOC0CV0200, Rev. 3/03.[2]   Defendant identified the "circumstances [that] have changed" as the basis for modification of his child support obligation as "RECALL ORDER FOR ARREST & PATERNITY[.]"  Thus, it appears that  defendant's "motion for modification" was actually requesting recall of an order for arrest and raising an issue regarding paternity.

¶ 6        On 22 October 2019, the trial court held a hearing based on defendant's motion for recall of the arrest order and "paternity[.]"   (Capitalization altered.) At the hearing, defendant argued that his name was not on the birth certificate and he did not "know nothing about the kid and she won't let me speak to him or nothing" as the basis for challenging paternity.  By order entered 22 October 2019, the trial court

in court for hearing on 12 December 2017.  Defendant failed to appear and an order for arrest was issued.

[2] The statutory authorities noted on this form are North Carolina General Statutes §§ 50-13.7 and -13.10. North Carolina General Statute § 50-13.7 governs a motion for modification of child support based upon "a showing of changed circumstances" and is "subject to the limitations of G.S. 50-13.10[,]" N.C. Gen. Stat. § 50-13.7 (2019), which provides in part that "[e]ach past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law, and a vested past due payment is to that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all parties either: (1)  Before the payment is due or (2)  If the moving party is precluded by physical disability, mental incapacity, indigency, misrepresentation of another party, or other compelling reason from filing a motion before the payment is due, then promptly after the moving party is no longer so precluded."  N.C. Gen. Stat. § 50-13.10 (2019).

recalled defendant's order for arrest issued on 12 December 2017. On 23 October 2019, the trial court entered a continuance order, continuing hearing of "a Motion to Modify/Order to Show Cause" to 8 January 2020. The trial court found that the continuance was requested "[f]or the Defendant (sic) request for a paternity test be scheduled and monitor compliance for the Order to Show Cause." CSEA appeals.

## II.    Interlocutory Order

¶ 7        CSEA contends the trial court erred in ordering DNA testing to establish paternity because paternity was already established in 2015. While CSEA contends the appeal is from "a final judgment[,]" the order on appeal is not a final order but an order to continue the hearing on defendant's "modification" motion and on an order to show cause. *Turner v. Norfolk Southern Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000) ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." (citation and quotation marks omitted)). As the order appealed is a continuance order setting a new hearing date for defendant's motion to modify child support and to "monitor compliance for the Order to Show Cause[,]" the order is interlocutory as it "is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *Id.* (citation and quotation marks omitted). The very name, *continuance* order, indicates that the action is being continued until a later time.

(Emphasis added.)

> There are only two means by which an interlocutory order may be appealed: (1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C.R. Civ. P. 54(b) or (2) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.

*Id.* (citation omitted).

¶ 8 The trial court has not certified the order for immediate appeal under Rule 54, and thus CSEA's only method for review is demonstrating a substantial right. *See generally id.*

> A substantial right is one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment. The right to immediate appeal is reserved for those cases in which the normal course of procedure is inadequate to protect the substantial right affected by the order sought to be appealed. Our courts have generally taken a restrictive view of the substantial right exception. *The burden is on the appealing party to establish that a substantial right will be affected.*

*Id.* at 142, 526 S.E.2d at 670 (emphasis added) (citation and quotation marks omitted).

¶ 9 In CSEA's original brief, CSEA contended the order was final, in the sense that the order required paternity testing, and CSEA contends there is no legal basis for paternity testing as the court had already established paternity in 2015. According to CSEA, the order "is void *ab initio*" because it was entered without subject matter

jurisdiction on the specific issue of paternity. CSEA's legal nullity argument stems from the contention that there was no cognizable motion pending before the trial court. However, defendant's "motion to modify" was before the trial court for hearing, as was stated in the "NOTICE OF HEARING" placing the issue before the trial court, although we agree that defendant's "motion to modify" was substantively not a motion for modification. CSEA seems to be contending the trial court did not have *authority* to order paternity testing, but that is a different question than whether it had jurisdiction. Even CSEA admits the "cases cited [in its brief] go towards the paternity issue being *res judicata*[.]" CSEA contends *res judicata* "overlaps with the issue of subject matter jurisdiction because subject matter jurisdiction is not captured when the issue has already been litigated placing the matter in the *res judicata* bin."

¶ 10        The confusion in this argument was perhaps caused by the use of forms intended for different purposes, so the titles and statutory references do not coincide with the substance of the documents. The "motion to modify" was not really a motion for modification of child support based upon a change of circumstances, and the trial court's "CONTINUANCE ORDER" is really an order for paternity testing. But looking to the substance of the "motion to modify" and the "order for continuance," this case does present an issue of *res judicata*.

¶ 11        Furthermore, we acknowledge an important procedural feature of this particular case on appeal. Defendant appeared *pro se* and initially did not file a

responsive brief. This Court *sua sponte* offered defendant the opportunity to participate in the North Carolina Appellate Pro Bono Program. Defendant accepted, and an attorney was appointed to represent him on appeal. Thereafter, his attorney filed a brief on his behalf. By order entered 9 February 2021, this Court allowed CSEA to file a reply brief and scheduled this case for oral argument.

¶ 12 Out of an abundance of caution, we invoke North Carolina Rule of Appellate Procedure 2 to consider the substantive arguments in CSEA's reply brief in order "[t]o prevent manifest injustice to a party [and] to expedite decision in the public interest[.]" N.C.R. App. P. 2. Rule 2 allows this Court "except as otherwise expressly provided by these rules [to] suspend or vary the requirements or provisions of any of these rules in a case pending before it[.]" Dismissal of this appeal as interlocutory based upon a technical argument regarding the timing of CSEA's assertion of a substantial right, particularly in a case where the briefing schedule was altered by the *sua sponte* appointment of *pro bono* counsel by this Court, would not serve to "expedite decision in the public interest[.]" *Id.* Instead, dismissal would harm the public interest because of the importance of clarity and finality in establishment of paternity to both parent and child. The General Assembly has recognized the importance of this public interest in finality of paternity adjudications in North Carolina General Statute § 49-14, which allows challenge to a prior adjudication of paternity only under specific, well-defined circumstances. Thus, to the extent review

of the order on appeal is not appropriate under Rule 28(h) regarding reply briefs, review would be appropriate "[t]o prevent manifest injustice" to the mother and child in this case and "in the public interest" of this State in the finality of parentage once established. *Id.* Accordingly, under Rule 2, we consider CSEA's substantial rights argument presented in its reply brief.

¶ 13        An argument of *res judicata* may involve a substantial right. *See Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993) ("[A] motion for summary judgment based on *res judicata* is directed at preventing the possibility that a successful defendant, or one in privity with that defendant, will twice have to defend against the same claim by the same plaintiff, or one in privity with that plaintiff. Denial of the motion could lead to a second trial in frustration of the underlying principles of the doctrine of *res judicata*. Defendant's motion simply seeks to relitigate an issue which was already adjudicated. Therefore, we hold that the denial of a motion for summary judgment based on the defense of *res judicata* may affect a substantial right, making the order immediately appealable."). In this case, the parties are the same, and defendant's motion was filed in the very same case in which paternity was already adjudicated, so there is no question of whether this is the "same claim" or the same parties for purposes of *res judicata*. *Id.* We conclude finality of a paternity adjudication by a prior court order demonstrates a substantial right which may be adversely affected if review were delayed. Once paternity has been

established, CSEA should not have to litigate the claim again unless defendant has presented a valid legal basis to challenge the prior adjudication. Accordingly, we consider CSEA's appeal.

### III.     Paternity

¶ 14          Defendant contends he is entitled to challenge the trial court's prior adjudication of paternity under North Carolina General Statute § 49-14(h). North Carolina General Statute § 49-14(h) provides,

> (h)     Notwithstanding the time limitations of G.S. 1A-1, Rule 60 of the North Carolina Rules of Civil Procedure, or any other provision of law, an order of paternity may be set aside by a trial court if each of the following applies:
>> (1)     The paternity order was entered as the result of fraud, duress, mutual mistake, or excusable neglect.
>> (2)     Genetic tests establish the putative father is not the biological father of the child.
>
> The burden of proof in any motion to set aside an order of paternity shall be on the moving party. Upon proper motion alleging fraud, duress, mutual mistake, or excusable neglect, the court shall order the child's mother, the child whose parentage is at issue, and the putative father to submit to genetic paternity testing pursuant to G.S. 8-50.1(b1). If the court determines, as a result of genetic testing, the putative father is not the biological father of the child and the order of paternity was entered as a result of fraud, duress, mutual mistake, or excusable neglect, the court may set aside the order of paternity. *Nothing in this subsection shall be construed to affect the presumption of legitimacy where a child is born to a mother and the putative father during the course of a marriage.*

N.C. Gen. Stat. § 49-14(h) (2019).

¶ 15          Even if we were to assume North Carolina General Statute § 49-14(h) could be applicable to defendant, we disagree with defendant that the word "paternity" on the motion to modify and his few statements before the trial court qualify as a "proper motion[.]" *Id.* North Carolina General Statute § 49-14(h) sets out the required showing for a putative father to seek paternity testing and specifically places the burden of proof to establish a basis to order testing upon the father by filing a "proper motion" alleging that the paternity order was entered "as the result of fraud, duress, mutual mistake, or excusable neglect." *Id.* Here, defendant's written motion purportedly sought to modify child support based upon changed circumstances, and the word "paternity" on the modification motion does not meet the standard set by North Carolina General Statute § 49-14(h).[3] *See generally id.* Even in his statements to the trial court at the hearing, defendant did not identify any factual basis to support a claim "of fraud, duress, mutual mistake, or excusable neglect." *Id.* Defendant simply asked for DNA testing without any statutory or factual basis. But paternity had already been adjudicated by the trial court, and the order was entered on 24 November 2015; defendant did not appeal the order. Accordingly, we must

---

[3] The word "paternity" also does not meet the statutory basis for modification of child support based upon a change of circumstances set forth by North Carolina General Statute § 50-13.7, which was the statutory authority noted on defendant's motion.

reverse the trial court's order as defendant did not file a "proper motion" with the requisite allegations. *Id.*

¶ 16        Furthermore, we must note that defendant's ability to file a "proper motion" under North Carolina General Statute § 49-14(h) depends upon whether the child was born while the parties were married. It is unclear from the record if and when the parties were married to one another and if and when that marriage was terminated. The complaint did not allege that the child was born during the marriage, and the child support order did not include any finding of fact regarding the marital status of the parents. CSEA's argument essentially assumes that the parents were married at the time of the child's birth. Nothing in the record directly contradicts the assumption that the child was born to the marriage of the parties, but nothing in the record establishes this fact either. The only information in our record indicating the child may have been born to the marriage is that the parents have the same last name and that the child's birth certificate had a note that Mother's husband's information was refused, indicating that she reported she had a husband at the time of the child's birth.

¶ 17        Defendant's claim that he is entitled to paternity testing is based upon North Carolina General Statute § 49-14, which is within Article 3 of the General Statute regarding, "CIVIL ACTIONS REGARDING CHILDREN BORN OUT OF WEDLOCK[.]" At the beginning of North Carolina General Statute, § 49-14,

subsection (a), addresses the cases in which the statute applies: "The paternity *of a child born out of wedlock . . . .*" N.C. Gen. Stat. § 49-14(a) (2019) (emphasis added). In addition, subsection (h) of North Carolina General Statute § 49-14 makes it clear that this provision does not apply if the child was born during the marriage of the parents: "Nothing in this subsection shall be construed to affect the presumption of legitimacy where a child is born to a mother and the putative father during the course of a marriage." N.C. Gen. Stat. § 49-14(h). Thus, North Carolina General Statute § 49-14(h) would not be applicable to defendant if the child was born during his marriage to Mother. However, nothing in our record establishes this fact, and thus this Court cannot determine whether defendant may be entitled to seek relief under North Carolina General Statute § 49-14(h). We hold only that the motion for modification was not a "proper motion" under North Carolina General Statute § 49-14(h), even if we assume *arguendo* that defendant and Mother were not married at the time of the child's birth.

¶ 18        Accordingly, we reverse the trial court's order and remand for further proceedings. Specifically, on remand the trial court shall enter an order dismissing defendant's purported motion for DNA testing and motion to modify as the motion did not allege changed circumstances under North Carolina General Statute § 50-13.7 or any grounds for relief under North Carolina General Statute § 49-14(h) and schedule a new hearing date for the "Order to Show Cause" which was also continued

by the order of continuance.

## IV.  Conclusion

Because defendant has failed to demonstrate any legal basis for requesting paternity testing to challenge the trial court's prior adjudication of paternity, the trial court erred by ordering paternity testing.  We reverse and remand for further proceedings as described above.

REVERSED and REMANDED.

Judges MURPHY and GRIFFIN concur.